<div style="margin-left:left">GRAHAM<br>v.<br>EAGAN.</div>

ever irregular, and the *purchaser* will gain a title under the Sheriff; *for it would be very hard if it should be at the peril of the purchaser under the fieri facias, whether the proceedings were regular or not.*" 2 Tidd, 936. (See also page 1129 cited, which has no application). The " purchaser " spoken of by Tidd is evidently a stranger to the writ of error.

It thus appears from the authorities cited, that they do not apply to the case before us.

The writ of *fieri facias* has been introduced into our system, it is true, from the common law. But it does not follow, that the rules governing writs of error on a reversal of a judgment are precisely applicable to a reversal on appeal under our system.

On the contrary, in the case before us, it is evident that there is a case for *the action* of restitution. It then becomes a question, whether the judgment under it shall be partial or complete. We say, if there is ground for the action at all, it must, according to the principles of the civil law, be a *restitutio in integrum*, as far as the party has capacity to make such restitution.

So far, we have considered this case, or endeavored so to do, upon legal principles.

Now, the argument *ab inconvenienti* is as urgent in favor of the debtor as the creditor.

The judgment debtor, by accident, as in this case, is sometimes prevented from taking a suspensive appeal. In other cases, he is too poor to give security. If he gives up property on execution, he waives his appeal. Our law, therefore, compels the appellant under a devolutive appeal to remain passive. He is, therefore, subject to oppression, and sometimes injustice, unless the restitution is as ample and complete as the party occasioning the injury has power to make it.

Judgment affirmed.

---

## MAILLE v. BLAS.

Where one slave kills another, the merits of the quarrel between them, and the fact of the slave killed being the aggressor, are immaterial, and will not be noticed in the decision of an action brought by the owner of the slave who was killed against the owner of the slave who killed him, for the value of the slave killed.

The proof of the loss is sufficient to fix the liability in a case of this kind.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J.

M. *Grivot,* for plaintiff.  *Race & Foster,* for defendant.

BUCHANAN, J. The slave of plaintiff was killed by the slave of defendant, wilfully, by wounds inflicted in a fight with knives. The merits of the quarrel between these slaves, and the fact of the slave killed being the aggressor, are indifferent to the decision of an action against the owner of the slave who killed, for the value of the slave who was killed. The use of deadly weapons in combat by slaves should be discountenanced. The fact of the loss is sufficient to fix the liability in a case of this kind.

Judgment affirmed, with costs.

VOORHIES, J., concurring. I concur upon the ground that the evidence shows that the defendant's slave was guilty of an offence in killing the plaintiff's slave.

The owner of slaves is responsible for the damages caused by their offences and quasi offences. C. C. 180, 2300.

MERRICK, C. J., dissenting. This is an action brought to recover the value of a slave killed by a slave of the defendant.

It appears from the evidence, that the death of plaintiff's slave was the result of a combat, which he had in the first instance provoked, and which was voluntarily renewed and continued with billets of wood, and finally with knives until the plaintiff's slave was mortally wounded. The plaintiff's slave was named *Joe*, and defendant's *Jack*.

The attention of the witnesses was first attracted by *Jack's* running from a coffee-house, pursued by *Joe*, who was attempting to strike the other with his fist. *Jack* ran into the street and picked up a piece of rock, which he was prevented from throwing. He then ran to a wood pile on the side of the walk, and picked up a piece of wood, and *Joe* also seized a stick of wood, with which they aimed and warded off blows at and from each other. The billets of wood fell from their hands or were relinquished, whereupon *Joe* seized *Jack* and struck him three or four blows on the head with his fist; *Jack* ran from *Joe* towards a crowd of men, and obtained a knife and turned, and in a slow run or fast walk followed *Joe*, who was going in another direction. *Jack* had also a piece of rock which he threw at *Joe* when he got within about thirty paces of him, but the missile did not hit him. *Joe* turned to come towards *Jack*, and drew his knife from his pocket. As soon as they approached each other near enough, *Jack* aimed a blow with the knife at *Joe*, but missed him; then they cut at each other, and the blood gushed from both. *Jack* was wounded in the head, and *Joe* was mortally stabbed. "The scuffle (that is fight from first to last) lasted ten or fifteen minutes."

It is evident that both slaves were in the wrong, and both were violating the law and disturbing the peace. If *defendant's* slave had been killed by the *plaintiff's*, the former would have had the same claim (if the action be maintainable) to indemnity from the plaintiff that the latter now has from the defendant. If, therefore, the defendant be responsible to the plaintiff, it is but the result of an accident. The cast of the die might have made plaintiff in turn responsible to the defendant. The Civil Code makes the master responsible for the offences and *quasi offences* of his slave (C. C. 2300, 180), and we are called upon to say whether this is one of those cases contemplated by the Code, the slave of the plaintiff having participated in the same offence.

If two white men had been in the place of these two negroes, their wounds not being mortal, and there being no impediment to their actions, neither could have succeeded against the other, because both would have been in the wrong. Slaves not being devoid of reason, but having a will to control their actions, are not looked upon as inert matter which may sometimes be driven about by the elements, but as intelligent beings, who are responsible to the law for their unlawful acts. Hence, the master's right of recovery for an injury done to his slave is made to depend frequently upon the volition and intention of the slave, who is not to be treated as an inanimate thing. For example, a slave is found, as an aggressor, violating the law, as in the case of burglary, robbery, or an attempt to murder, and is slain under such circumstances as would justify the taking of the life of a freeman. He is not looked upon merely as a thing, the property of his master, but as a responsible being who has brought the injury upon himself and owner, and his unlawful intentions become the justification of the party who has taken his life.

MAILLE
*v.*
BLAS.

So too, a slave carelessly drives his cart across a railroad track, and is killed by the locomotive. The Railroad Co. is not responsible, because the negro is in the wrong. *Lesseps* v. *The Pontchartrain R. R. Co.*, 17 La. 363. Another lays himself upon a railroad track and goes to sleep, and is killed by the cars. The company is not responsible, because the slave was guilty of neglect. *Fletas* v. *The Pontchartrain R. R. Co.*, 8 La. 340.

It is then apparent, that a party's right to recovery for the loss of his slave depends in many cases upon the question whether the slave, for which he claims recompense, has or has not acted lawfully and prudently, or whether he has not brought the injury upon himself by his negligence, his malice or felonious intent.

If it be said that the defendant's slave has been guilty of an offence or *quasi* offence, and therefore his master, under the letter of the Article of the Civil Code, is responsible, the answer is, that the slave of the plaintiff was likewise a party to the same act, the same affray ; and where two parties are equally guilty and equally in the wrong, this court will not sit to adjust the consequences of crime or iniquity between them.

In the case of *Fletas* v. *The Pontchartrain* R. R. Co., 18 La. 340 (where a slave went to sleep upon the railroad track and was killed by the cars) it was said by this court that, " in cases like the present, where the accident may be attributed to the fault or neglect of both parties, the plaintiff cannot recover."

" In the case of a collision between two vessels, Lord Tenterden, Chief Justice, says, in summing up the case to the jury, the question is, whether you think the accident was occasioned by want of care on the part of the crew of the Robert and Ann (the defendant's vessel) ? *If there was want of care on both sides, the plaintiffs cannot maintain their action;* to enable them to do so, the action must be attributable *entirely* to the fault of the defendant." 18 La. 340.

I see no reason to doubt the correctness of this decision ; and as the conduct of plaintiff's negro cannot be justified in this brutal affray, it seems that the loss must fall upon the owner. We have already said, to hold otherwise would be to rest the right of the parties upon an accident, viz, the unfavorable result of the combat ; and under this view of the case, we find a decision of the court of cassation which has some analogy.

Article 1385 of the Napoleon Code, which makes the owner of an animal responsible for the damage which it causes, is absolute, and the owner cannot relieve himself by surrendering the animal as under our law. But it has been adjudged that where, by common accord of the proprietors, two animals have been put in a pasture together without any keeper, and one of the animals occasions an injury to the other, the proprietor is not responsible for the injury, because in fact the chances of accident were the same for all parties, and both were voluntarily exposed, and the plaintiff could not find in a fact which was common to both the basis of an action, in order to complain of the consequences of a state of things which he himself had accepted. (Arrêt du 2 Juillet, 1851, ch. civ., Sirey, 51, I, 447.

I think, therefore, the judgment ought to be reversed, and judgment rendered for the defendant.