## GUILLORY v. SHADDOCK et al.
### No. 1409.

Court of Appeal of Louisiana. First Circuit.
Jan. 21, 1935.

See, also, 179 La. 948, 155 So. 444.

P. M. Milner, of New Orleans, and Carmouche & Carmouche, of Crowley, for appellants.

Atlee P. Steckler, of Ville Platte, for appellee.

MOUTON, Judge.

In March, 1933, Mr. A. C. Steen, while driving a truck as the employee of Mr. R. M. Shaddock in the town of Mammou, ran over Mr. Thomas Guillory, plaintiff herein, who obtained judgment in damages against Mr. Shaddock and his insurer, the Maryland Casualty Company, the appellant.

The Maryland Casualty Company denied that Mr. Steen, driver of the truck, had been guilty of any negligence whatsoever when the collision occurred; and, in the alternative, alleged that, if Mr. Steen was in any way negligent, plaintiff was guilty of contributory negligence down to the moment of the accident, which precludes him from recovery.

There are other special defenses, not affecting the merits, urged by defendant company, but which we find unnecessary to consider, as the case will be disposed of on the issue of contributory negligence.

Plaintiff was injured while crossing Sixth street in the town of Mammou. This street is 53 feet wide at the point where plaintiff was crossing. In the center of the street there is a paved highway 18 feet wide with a black line down the center.

Plaintiff was walking across the street from the west to the east side when he was struck by the truck which was coming from the north, going southward. There were no vehicles, cars, or other obstruction on this street at the time of this accident, which occurred at about 3 or 4 o'clock in the afternoon. It is therefore obvious that there was nothing that could have obscured the vision of either Mr. Steen, driver of the truck, or Mr. Guillory, plaintiff herein.

The fact is that Mr. Roujeau, witness for plaintiff, says there was nothing in the way to keep Mr. Guillory from seeing the truck; and on this subject, referring to the truck, says: "He could see as good as I did."

The truck was going between 12 and 15 miles an hour as it was advancing on plaintiff, and must have been going at a lesser speed when the collision happened, as Mr. Roujeau testifies, that the driver of the truck tried to avert striking plaintiff when he saw him, but, according to Mr. Roujeau, was then so close to plaintiff he could not avert the accident.

Plaintiff says he has good eyesight and hearing, and testifies that he heard the truck as it came towards him from the north side of Sixth street; that he saw it coming, and again a second time.

The proof shows that plaintiff was hit by the truck two or three steps after he had crossed over the black line which ran in the center of the paved part of the highway. The truck had ample room to pass back of plaintiff, the direction in which it should have been going, as this was the west side of the street and the right of way upon which the truck was traveling. Mr. Steen, driver of the truck, was therefore at fault in passing to the east side of this black line and in striking plaintiff after he had passed to the east side of that line.

After hearing and seeing the truck a second time, plaintiff continued to walk across the street. He says: "I didn't think he would bump me. I thought he would pass on the right hand side." This he explains by saying: "In a town after passing the middle of the street, I was supposed to look forward."

He testifies that, after passing the middle of the road, "I looked down—I have a habit of looking down."

His attitude of mind at that time indicates that he was relying in absolute confidence on the assumption that the driver of the truck would pass behind him, as he should have done. It may be that under ordinary circumstances a pedestrian might indulge to a reasonable extent on such an assumption, but,

after hearing and seeing the truck coming in his direction, he should not have looked down when walking, according to his habit, as he testified.

The following question was asked plaintiff, quoting:

"Q. If you had looked just before the truck hit you couldn't you have seen it was going to hit you and gotten out of the way? A. Maybe I could have dodged on one side or the other, but the way he was going—he kept on the left side all the time."

It is evident from this answer of plaintiff that he was then looking at the on-coming truck, as he says, it "kept on the left hand side all the time." This left-hand side, as shown by the evidence, was on the side east of this black center line on the pavement which plaintiff says he had already crossed to the east when he was struck. Although he had crossed this center line, he kept on walking and "looking down," as it was his habit. Threatened as he was by this truck coming on its left side, in obedience to the promptings of self-preservation he should have accelerated his steps forward, or he should have stopped or gone backward to avoid the collision. He says he might have been able to "dodge" the truck, and we have no doubt he could have done so had he made an effort in that direction. Instead of so doing, he kept on walking with his head down and in the pathway of the truck, as his own testimony shows, it was "keeping" to "the left hand side all the time."

In thus exposing himself to this imminent and almost inevitable danger, plaintiff was clearly negligent and at fault down to the moment of the accident, as alleged in the plea of contributory negligence filed by defendant company.

The rule of law is well recognized that, when the combined negligence of plaintiff and defendant has caused the injury, plaintiff cannot recover damages.

In the case of Mrs. M. D. Ryan v. Louisville, New Orleans & Texas Railway Co., 44 La. Ann. 806, 11 So. 30, the court said it is uniformly held that, "if plaintiff's own evidence establishes or strongly suggests his own contributory negligence," he cannot recover.

The evidence of plaintiff in this case is more than suggestive, and shows that his negligence contributed to the accident. When such is the situation, plaintiff cannot recover damages, as it is held in many decisions of our courts. See, also, Woods v. Jones, 34 La.

Ann. 1086; Fleytas v. Railroad Co., 18 La. 339, 36 Am. Dec. 658.

The doctrine of the "Last Clear Chance" is invoked in this case by plaintiff.

In reference to this rule recognized by our courts, in Harrison v. Louisiana Western Ry. Co., 132 La. 761, 61 So. 782, 784, the court said: "'This so-called exception to the rule of contributory negligence (i. e., the doctrine of "last clear chance") will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury.' * * * 'The rule has no application where the negligence of the person injured and of defendant are concurrent, each of which, at the very time the accident occurs, contributes to it.'" See Dyerson v. Union Pacific, 74 Kan. 528, 87 P. 680, 7 L. R. A. (N. S.) 132, 11 Ann. Cas. 207.

As hereinabove shown from our analysis of the evidence that there was concurrent negligence on the part of plaintiff and defendant which contributed to the injury at the very time of the accident, the rule of the last clear chance does not apply.

In the case of Roder v. Legendre et al., 147 La. 295, 84 So. 787, 789, the court had occasion to apply the doctrine that, where "the negligence of both parties was concurrent at the time of the accident," as was the case here, "plaintiff cannot recover damages."

In concluding its opinion in that case, the court said: "Plaintiff argues that she should recover damages under the doctrine of the last clear chance. But there is no place for the application of that doctrine here. There is no evidence whatever going to show defendant was guilty of a willful act of negligence, or that he was wanton in his disregard of the life and safety of plaintiff. And there is no evidence going to show that defendant had it in his power, or should have had it in his power, to have prevented the accident to Mrs. Germann, after he discovered the danger of her position."

The proof is that the driver of the truck here was going at about 12 or 15 miles an hour, which was a reasonable rate of speed, and it is therefore apparent that he was not driving in a wanton or reckless manner in disregard of the life and safety of plaintiff. There is also no proof whatsoever that the driver of the truck was guilty of a willful act of negligence. The proof is that he was looking to the east at the time, an act indicating that in a moment of forgetfulness at that time he failed to turn to the west side of the

street. In that respect, as we have hereinabove stated, he was at fault, but was certainly not guilty of wanton or willful negligence.

The testimony of Mr. Roujeau, witness for plaintiff, shows that the driver of the truck tried to avoid any injury to plaintiff, but, as he says, was too close to plaintiff to avert the accident after he saw him. It was not therefore then in the power of the driver of the truck to have prevented the accident after "he discovered the danger" to plaintiff.

Hence it is proper to hold, as was held in the case of Roder v. Legendre, 147 La. 295, 84 So. 787, above referred to, that the doctrine of the "Last Clear Chance" finds no application in this case.

Plaintiff is not entitled to damages.

The judgment below is erroneous, and must be reversed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed, and that the demand of the plaintiff be rejected at his cost in both courts.